812 P.2d 1341

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**John MARES, Defendant–Appellant.**

**No. 11666.**

Court of Appeals of New Mexico.

April 30, 1991.

Certiorari Denied June 12, 1991.

Tom Udall, Atty. Gen., Charles H. Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

APODACA, Judge.

Defendant appeals jury convictions of second degree criminal sexual penetration (CSP), kidnapping, and four counts of aggravated battery. He raises five issues on appeal: (1) the trial court's contact with jurors outside defendant's presence; (2) ineffective assistance of counsel based on trial counsel's unilateral failure to move to sever counts before trial; (3) the propriety of counts merger; (4) the trial court's admission of the dates of prior convictions; and (5) the trial court's admission of the victim's out-of-court statement. Defendant did not brief one issue he raised in his amended docketing statement and is thus deemed to have abandoned that issue. *See State v. Roybal*, 107 N.M. 309, 756 P.2d 1204 (Ct.App.1988). We reverse only on the merger of battery counts under issue 3. Defendant's arguments do not persuade us with respect to all other issues. We thus affirm his convictions in all other respects.

## FACTS

*The Incident Giving Rise to the Charges.*

The victim testified that on August 5, 1988 (the August 5 incident), she went with a friend to a bar. They drank and socialized with other patrons. Defendant introduced himself to the victim and later enticed her to go with him to his car to obtain some marijuana. After first giving a couple a ride home, defendant told the victim he did not have marijuana in his possession but that they could drive elsewhere for it. En route, they stopped at a park to use restroom facilities. When they returned to the car, defendant made advances at the victim.

Until then, the victim had not been apprehensive. She repelled defendant's efforts

and he stopped. However, she noticed he appeared angry. Defendant drove the car only a short distance, then stopped and suddenly climbed on top of the victim and began choking her. Frightened, she quickly opened the car door to escape. She fell or dragged herself out of the car, but defendant jumped on her and began choking her again. They struggled. Defendant continued choking the victim and then began hitting her in the face with his fist. Somehow, she convinced him to let her get up. When she stood up, she attempted to escape, but defendant had hold of her hair and began choking and hitting her again. She got up a couple of times and tried to run away, but he caught her each time. From what he was saying to her as he hit her, she realized he was trying to knock her out.

Eventually they ended up by a bush. While they struggled there, a vehicle arrived. Apparently to silence the victim, defendant began choking her again until the vehicle left. He then took his pants off and attempted to rape the victim. He failed to achieve an erection and, instead, digitally penetrated the victim. Soon, a police car arrived, giving the victim an opportunity to escape. She immediately ran to the police car, seeking assistance. She testified that he tried to choke her four to six times, and pointed to four separate episodes.

### Pre–Trial and Trial Proceedings.

Several defense motions were set for hearing before trial. Defendant was not able to attend this hearing because he was incarcerated, but defense counsel stated that defendant's presence was "not constitutionally required." At this hearing, the trial court and defense counsel discussed the possibility of severing certain counts concerning an incident (the prior incident) that had occurred before the August 5 incident. We should note at this juncture that, following a mistrial, a jury later acquitted defendant of these particular counts.

During the course of the hearing, defense counsel stated that he would not seek severance. In explaining his decision, he stated that the description of the offender given by the victim of the alleged criminal acts involved in the prior incident did not match defendant's and, because of the discrepancy, they should proceed with all counts joined. Apparently, counsel theorized that there was some strategic advantage in having the impeachable testimony to be adduced at the trial involving the August 5 incident. We assume defense counsel sought to discredit the state's case entirely by transferring the prejudice to the state from a flawed identification in the prior incident to the entire trial.

During voir dire, two jury panel members stated they wanted to speak privately with the trial judge about possible difficulties in serving as jurors. The trial judge said that he would first talk with these prospective jurors, as well as a third juror, and would then call in counsel and defendant if the jurors did not object. With defendant present, defense counsel agreed to the procedure. The record reflects the trial judge spent seven minutes in chambers alone with the three prospective jurors.

The trial judge then reconvened with counsel, presumably in defendant's presence, since the record does not indicate he was absent. At this conference, the trial judge questioned each panel member individually about the concerns they had expressed to him privately. One explained he needed to take hourly breaks. Another stated he had a vision problem best accommodated by sitting in the front row of the jury box. The third one said she was involved in litigation scheduled for hearing the next day. Both counsel stated they had no questions.

During trial, three events occurred that are significant to the issues raised in this appeal. First, the state called as a witness the friend with whom the victim went to the bar the night of the August 5 incident. The friend testified she had visited the victim the morning after the incident. She found her taking a shower. When the

friend saw the victim's bruises, they both began to cry. The friend gave detailed testimony concerning the victim's hysterical account of the events of the preceding night. Second, over objection, the trial court admitted evidence of the dates of defendant's prior convictions. Finally, near the end of trial, the prosecutor alerted the trial judge to certain odd behavior by the juror who had previously informed the court of his vision problem. The trial judge sought and obtained defense counsel's approval to speak privately with the juror in chambers. After doing so, the trial judge explained to counsel that the juror had an excitable personality and that his odd behavior was his way of relieving tension. Apparently satisfied, neither counsel took action, and the trial proceeded to completion.

DISCUSSION

*Contacts with Jurors.*

Relying on our supreme court's recent holding in *State v. Wilson,* 109 N.M. 541, 787 P.2d 821 (1990), defendant argues that the court's contacts with the jurors deprived him of due process. He contends that *Wilson* requires a new trial, because the trial court did not offer him an opportunity to be present during the court's contact with jurors and defendant himself did not expressly waive that right. We disagree with defendant's contention, both because defendant waived the right to be present during such contact and because he was afforded an opportunity to meaningfully participate in the process.

■ Before the trial judge communicated with any of the jurors, he explained in open court what he intended to do. We presume defendant was present on those occasions. On both occasions, defense counsel explicitly approved of the procedure. Defendant said nothing. In that circumstance, defendant waived any objection to the procedure. When counsel speaks in open court in the presence of a defendant, he speaks on behalf of that defendant. In such circumstances, a defen-

dant cannot remain silent and then contend that his counsel had no authority to bind him to a tactical decision concerning how to proceed in determining a juror's problem. *See State v. Ramming,* 106 N.M. 42, 738 P.2d 914 (Ct.App.1987).

■ Even if there was no waiver, we would affirm the trial court based on our holding in *State v. Haar,* 110 N.M. 517, 797 P.2d 306 (1990). In *Haar* we implied that, where the trial judge affords defendant meaningful input and participation in the processes involving juror issues, no error results from the judge's communications with those jurors in the absence of prejudice. In this case, after the trial judge met with the three jurors prior to trial, the jurors repeated their concerns in open court, in the presence of all counsel and, presumably, in the presence of defendant. Counsel were allowed an opportunity to ask questions, although they did not. In addition, after the judge communicated with one juror late in the trial, the judge reported the substance of the conversation to counsel so that defendant had an opportunity to pursue the matter further. He did not do so. Under these circumstances, we hold that defendant was given the opportunity to participate in the procedures involving the jurors and was not prejudiced by the judge's communications with the jurors. *See State v. Haar; see also State v. Wilson* (Ransom, J., concurring and emphasizing that the problem in that case was the lack of meaningful opportunity for defendant to participate in the decision to excuse one juror after trial had begun).

The *Wilson* decision does not require a different result in this case because in *Wilson* the defendant did not waive the issue, although he failed to preserve it for appeal, and the defendant was not given a meaningful opportunity to participate in the process. There is no indication in *Wilson* that the trial judge announced beforehand that she planned to talk to the juror. Therefore, defendant had no opportunity to object to the conversation before it occurred. In addition, in *Wilson* the judge simply

decided to excuse the juror and announced her decision in open court. In this case, on the other hand, defendant was informed of the substance of the conversations and could have participated in the decisions made regarding those jurors. The prejudice present in *Wilson* is, for that reason, lacking in this case.

### Ineffective Assistance of Counsel.

■ Defendant argues that defense counsel's unilateral failure to move to sever deprived defendant of effective assistance of counsel. *See State v. Dean*, 105 N.M. 5, 727 P.2d 944 (Ct.App.1986) (test for effective assistance of counsel is whether defense counsel exercised skill, judgment, and diligence of a reasonably competent defense attorney); *State v. McGuinty*, 97 N.M. 360, 639 P.2d 1214 (Ct.App.1982) (same).

Defendant claims that severance was necessary to protect him from the harm or tainting effect of evidence adduced with respect to the previous incident, which was allegedly unrelated to the August 5 incident and involved a different victim. Defendant's argument, as we understand it, is as follows. With respect to the August 5 incident, defendant admitted his identity, but, according to him, the catalyst to the events of the night in question was vastly different from the victim's version. The jury was free to believe his version over that of the victim's, or vice versa. *State v. Sutphin*, 107 N.M. 126, 753 P.2d 1314 (1988) (the fact finder may reject defendant's version of an incident). Defendant argues on appeal that introduction of the evidence involving the prior incident would tend to affect the jury's overall consideration of credibility.

With respect to the facts of the unsevered counts (relating to the prior incident), defendant admitted that another victim had been battered and criminally sexually penetrated, but defendant denied any involvement whatsoever. Instead, he completely denied commission of the acts. He claims

that his admission that CSP occurred in the prior incident, even though not perpetrated by him, when considered by the jury together with defendant's admission of identity involving the August 5 incident, would unjustly and inappropriately suggest to the jury that he was the CSP perpetrator on both occasions.

We reject defendant's argument because we conclude defense counsel's choice not to seek severance was a matter of trial tactics. One can reasonably assume that the state's case on the unsevered counts was relatively weaker, since that victim's identification of defendant was equivocal. Indeed, we believe this fact was borne out by the jury's inability to reach a verdict on those counts. The record reflects that defense counsel's strategy was to transfer the lack of the first victim's confidence to the entire state's case. Thus, defense counsel expressly theorized there was a strategic advantage to trying all claims together.

Because severance presented varying advantages and disadvantages for defendant, we cannot conclude that defense counsel's representation was ineffective under our standard of review. To the contrary, we hold that counsel's actions were reasonable trial tactics. *See Garrett v. Swenson*, 331 F.Supp. 1197 (E.D.Mo.1971), *rev'd on other grounds*, 459 F.2d 464 (8th Cir.1972); *Commonwealth v. Dumas*, 299 Pa.Super. 335, 445 A.2d 782 (1982). We will not second-guess a trial counsel's tactics and strategy. *State v. Dean*. Based on our disposition of this issue, we need not consider the state's argument that severance was not available in this case.

### Merger of Counts.

Defendant seeks two results from his argument that the trial court should have merged certain counts. First, he requests merger of the kidnapping and CSP counts. We recognize "that, when the facts used to establish the elements of each offense are identical, imposition of multiple punishment

for violation of the kidnapping and criminal sexual penetration statutes is problematic under existing case law." *State v. McGuire*, 110 N.M. 304, 308, 795 P.2d 996, 1000 (1990). Here, however, the facts were not identical.

■ In this appeal, there was evidence that defendant made advances at the victim. Until then, the victim apparently had not realized defendant might harm her, since he had not held her against her will. Then there was the moment when defendant became angry. At that time, he drove his vehicle to another part of the park, where he attempted to rape the victim. When defendant lost his temper, it was then that she first knew she was in trouble.

Under these facts, the jury could reasonably infer that the victim was no longer voluntarily with defendant. It also could infer that, during this brief period of time, defendant held the victim against her will for future services. The facts necessary to prove the crime of kidnapping were thus different from the facts necessary to prove CSP. *See State v. Corneau*, 109 N.M. 81, 781 P.2d 1159 (Ct.App.1989) (acts of dragging victim from living room to bedroom, then raping her, sufficient to support separate convictions of kidnapping and CSP).

The second result defendant seeks is merger of the four counts of battery. He argues that this issue is a matter of legislative intent—whether the legislature intended separate criminal sanctions for his conduct. *See State v. Ellenberger*, 96 N.M. 287, 629 P.2d 1216 (1981). *See also State v. Williams*, 105 N.M. 214, 730 P.2d 1196 (Ct.App.1986) (defendant's touching of several intimate parts of a victim's body was punishable by separate counts of criminal sexual contact, due to legislative intent).

Initially, we note that in *Williams*, the defendant touched the victim's body once on the breasts and once on the genitals, but was convicted of four counts of criminal sexual contact because he was aided and abetted by an accomplice. The court held that the presence of aggravating circum-

stances in the commission of criminal sexual contact cannot be used to classify separate offenses resulting from the *same act*. Therefore, the defendant could only be convicted of one count of criminal sexual contact for each instance of touching the victim; in *Williams*, the defendant's convictions on two counts were upheld. *Williams* does not address instances of multiple, separate contacts with the same part of the victim's body.

■ Our analysis of this issue revolves around our supreme court's recent decision in *Herron v. State*, 111 N.M. 357, 805 P.2d 624 (1991). *Herron* analyzed the language of NMSA 1978, Section 30-9-11 (Repl. Pamp.1984), the CSP statute. The supreme court held that the statute did not "punish separately each penetration occurring during a continuous attack absent proof that each act of penetration is in some sense distinct from the others." *Id.* at 361, 805 P.2d at 628. We adopt the same approach to allegations of multiple batteries.

■ *Herron* noted various factors in determining whether acts are distinct. We paraphrase the factors so that they do not pertain only to CSP. These factors include the time between criminal acts, the location of the victim at the time of each criminal act, the existence of any intervening event, distinctions in the manner of committing the criminal acts, the defendant's intent, and the number of victims. *Id.* at 361, 805 P.2d at 628.

■ Although there may in fact have been multiple batteries in this case, the evidence at trial would not sustain a verdict of multiple batteries. The victim's testimony lacked detail. The evidence in this case, as reflected in the record, was as follows: Defendant hit the victim over and over again in the face with his fist and choked her in order to knock her out; choked her once they were in the bushes so that she would not scream and alert the police; pulled her hair to catch her as she was trying to escape; and slapped her for no

apparent tactical reason. Often he would both choke and hit the victim. These incidents took place over one violent rampage with little time between offensive contacts. While this event took place in the car, on the ground, and in the bushes, we cannot determine from the record exactly how far defendant transported the victim while he pulled her hair and while he beat, choked, and slapped her. The arrival of the vehicle apparently intervened to stop defendant's beating of the victim so that he found it necessary to get to the bushes. However, there is no indication in the record how much of an intervention that was. We cannot determine whether it was but for a moment, or for an extended period of time. Finally, the record does not prove that the intent behind the attack changed during the course of the attack.

The only factor weighing in favor of separate offenses is the various methods by which defendant battered the victim. This is not sufficient for this court to conclude that the offensive contacts were separate acts. We hold that "the evidence simply [did] not permit inferences that the [offensive contacts] were in any sense separate and distinct." *Id.* at 363, 805 P.2d at 630. We therefore conclude, as a matter of law, that defendant was guilty of, at most, one count of aggravated battery. *See id.* In reaching this result, we note that the supreme court in *Herron* found in that case "that the evidence supports, at most, five convictions and sentences * * *." In doing so, the court applied the factors it announced to the events that gave rise to the charges. Although the supreme court used "find", we believe the court determined, as a matter of law, that the evidence would not support more than five convictions and sentences. In other words, the court was stating that reasonable minds could not differ as to the question. *See State v. Ferguson,* 77 N.M. 441, 423 P.2d 872 (1967); *State v. Mares,* 92 N.M. 687, 594 P.2d 347 (Ct.App.1979). In concluding that defendant here could be found guilty, at most, of one count of aggravated battery, we similarly decide reasonable

minds could not differ as to the number of crimes committed.

This raises, however, the question as to what standard applies if reasonable minds could differ. Perhaps retrial would be indicated, so the issue could be decided by the fact finder under proper instructions. *Herron,* however, did not address that issue.

### Evidence of Dates of Defendant's Prior Convictions.

Defendant contends that the trial court's admission of the dates of prior convictions was prejudicial and thus reversible error because one of the convictions occurred within days of the occurrence of the August 5 incident. This proximity in time, defendant argues, creates an improper inference of bad character for which the jury may have convicted him.

■ This argument ignores the expressed purpose for which prior convictions are admissible—impeachment. The dates of prior convictions generally have been held to be within a prosecutor's proper inquiry regarding those convictions. *See Beaudine v. United States,* 368 F.2d 417 (5th Cir.1966); *cf. United States v. Finkelstein,* 526 F.2d 517 (2d Cir.1975), *cert. denied, Scardino v. United States,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976); (one may attack credibility by establishing the number of convictions, the nature of the crimes charged, and the date and time of conviction); *see generally* E. Cleary, *McCormick on Evidence* § 43, at 98 (3d ed. 1984). We consider this reasoning to be sound because the less contemporaneous the prior conviction is to the acts at issue, the more remote the impeachment value. We believe that reasoning, in part, provides the basis for the rule that convictions over ten years old are not admissible. *See* SCRA 1986, 11–609(B).

■ Defendant relies on *State v. Ocanas,* 61 N.M. 484, 303 P.2d 390 (1956) for the bright line rule that a prosecutor, on cross-examination, may go no further than

eliciting the name of the crime and the fact of conviction. However, we do not read *Ocanas* as barring the examination in this case. In that case, the conviction was affirmed even though the prosecutor questioned the defendant concerning the dates and the states of his prior convictions. The court wrote: "By statute, the district attorney on cross-examination was entitled to show all prior convictions and the names of the particular offenses. The present examination of the witness went no further." *Id.* at 486–87, 303 P.2d at 391 (citation omitted). It is apparent from this language that "showing" a conviction includes eliciting time of the conviction. Given the importance placed on the time of the conviction by Rule 11–609, we are confident that our supreme court would rule that the date of the conviction is material and admissible. The trial court properly admitted the evidence.

#### Admission of Hearsay Evidence.

■ Defendant contends the trial court erred in admitting hearsay evidence through the victim's friend of victim's recount of the August 5 incident. He argues that, several hours after the incident, the victim could not have been under the immediate stress of the incident. Defendant therefore maintains that the victim's utterance was not the type of excited utterance admissible as an exception to the hearsay rule. *See* SCRA 1986, 11–803(B). We disagree.

*State v. Maestas*, 92 N.M. 135, 584 P.2d 182 (Ct.App.1978), controls our disposition of this issue. There, the defendant objected to hearsay evidence that the victim identified the defendant as her assailant. The defendant had severely beaten the victim over the course of several days. Her mother transported her to a nearby clinic in the early evening. An ambulance took her to a nearby hospital forty minutes later. Still later that evening, during a visit with her mother, the victim identified the defendant as her assailant. The victim "was shaking, her lips were trembling, and her eyes were big, frightened and yellow." *Id.* at 139, 584 P.2d at 186.

*Maestas* concluded that the excited utterance doctrine was not so much limited in time as it was to the emotional state of the declarant when making the out-of-court declaration. We considered significant the fact that the victim was in an obvious state of severe distress when she made her declaration. We therefore held that this was a sufficient indication that she was not likely under any influence to fabricate an identification, but that emotion brought out reliable information. *Id.*

Here, the evidence was that the victim was injured and distressed, just as the victim in *Maestas* had been. Here, the assault on the victim ended when a police officer arrived at 2:46 a.m. Her friend arrived at the victim's house at about 6:00 a.m., approximately three hours later. Before then, the victim had been with the police and had gone to the hospital, before returning home. When the friend arrived, she found the victim in the shower. She observed that the victim had a broken nose and cuts, scratches, and bruises all over her body. When the friend arrived, both the victim and the friend broke down and cried. After the victim composed herself somewhat and finished getting out of the shower, she and her friend went to the bedroom to talk. The friend described the victim's condition as follows: "She was crying. She was hysterical. She was shook up. She was still shaking. She kept telling me, you know, to look at her where she was all scratched up and all bruised up." From this evidence, we conclude the trial court could rule that the victim here was under sufficient distress that her declaration was reliable. We thus hold that the trial court did not abuse its discretion pursuant to SCRA 1986, 11–104(A) in determining that the hearsay was sufficiently reliable to be admissible under Rule 11–803(B). *See State v. Maestas.*

CONCLUSION

We reverse and remand to the trial court with instructions to vacate all but one of

the battery convictions and sentences, and to resentence defendant on one count only. *See Herron v. State.* Otherwise, being unpersuaded by defendant's arguments on the other issues, we affirm the convictions in all other respects. We also deny defendant's motion to amend the docketing statement.

IT IS SO ORDERED.

BIVINS and HARTZ, JJ., concur.