This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          NO.   29,479

**ANTHONY MORGAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Teddy L. Hartley, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Anthony Morgan (Defendant) appeals from his convictions for criminal sexual penetration in the second degree (CSP II), kidnaping, two counts of aggravated assault, one count of aggravated battery on a household member, and six counts of battery on a household member. Defendant argues that his right to due process was violated because one of the jury verdict forms did not match the jury instructions. Defendant also contends that the kidnaping, the CSP II convictions, and the multiple convictions for battery and assault violated his right to be protected from double jeopardy. Defendant further argues that (1) he was denied his right to a speedy trial, (2) his counsel was ineffective, and (3) there was insufficient evidence to convict him. We address each argument in turn.

**I.    BACKGROUND**

While at their home on October 15, 2006, Defendant argued with his wife (Victim) upon finding her employee keycard within her belongings. Assuming it was a hotel key, Defendant accused Victim of cheating on him and began to beat her. At some point, Defendant decided to leave their home with Victim in order to verify that the keycard was work-related and not a hotel keycard. Defendant had Victim drive and make two stops within the city of Clovis.

At the second location, when Defendant exited the vehicle, Victim drove away because she was afraid of him. Defendant jumped onto the hood of the vehicle and

eventually regained control of the vehicle. After reentering the vehicle, Defendant beat Victim. Subsequently, Defendant drove Victim to a remote location in the county on a dirt road between 11:00 p.m. and midnight. At the remote location, Defendant beat and raped Victim. After the rape ended, Defendant and Victim returned in the vehicle to their home. There, Defendant stabbed Victim in the leg with a claw-like garden tool.

The next morning, Defendant prevented Victim from leaving the home to go to work, and he repeatedly choked her until she lost consciousness. In addition, Defendant twice held a gun to Victim's head. Toward the end of the day, when Victim was packing a bag of clothes to leave their home, Defendant spit on her.

Defendant was charged and convicted of criminal sexual penetration in the second degree (CSP II), kidnaping, two counts of aggravated assault, one count of aggravated battery on a household member, and six counts of battery on a household member. Defendant now appeals.

II.    DISCUSSION

**A.    Defendant's Right to Due Process Was Violated by an Error in the Jury Verdict Form**

Defendant argues that his right to due process was violated because the jury instructions for Count 5 and its lesser-included offense do not match the jury verdict form. Because Defendant failed to preserve this issue, we review for fundamental

3

error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134; *see* Rule 12-216(B)(2) NMRA. "Parties alleging fundamental error must demonstrate the existence of circumstances that 'shock the conscience' or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (citation omitted). "Fundamental error will only be involved to prevent a plain miscarriage of justice where the defendant has been deprived of rights essential to the defense." *State v. Jaramillo*, 85 N.M. 19, 20, 508 P.2d 1316, 1317 (Ct. App. 1973). This case is not one where Defendant's innocence appears indisputable. *See State v. Sanders*, 54 N.M. 369, 379, 225 P.2d 150, 157 (1950) (explaining that one purpose for fundamental error analysis is to protect "those whose innocence appears indisputably or open to such question that it would shock the conscience to permit a conviction to stand"). Thus, our focus is directed "on process and the underlying integrity of our judicial system." *State v. Barber*, 2004-NMSC-019, ¶ 16, 135 N.M. 621, 92 P.3d 633. We must be convinced that the error at trial resulted in "grave doubts concerning the validity of the verdict." *State v. Barraza*, 110 N.M. 45, 49, 791 P.2d 799, 803 (Ct. App. 1990).

Here, the jury instructions for Count 5 provide instruction for "aggravated battery with a deadly weapon" and a lesser-included offense instruction for "battery

4

on a household member." The aggravated battery with a deadly weapon instruction did not require Victim to be a household member, nor did it identify the crime as aggravated battery against a household member. [Id.] Yet, the verdict form for Count 5 states: "We find . . . [D]efendant [guilty] of Count 5 [a]ggravated [b]attery [a]gainst a [h]ousehold [m]ember." (Emphasis omitted.) Even more problematic, there is no verdict form for the lesser-included crime of battery on a household member anywhere in the record.[1]

We analogize this verdict form issue to our fundamental error analysis with regard to jury instructions where we "determine if a reasonable juror would have been confused or misdirected by an error in the jury instructions." *State v. Davis*, 2009-NMCA-067, ¶ 13, 146 N.M. 550, 212 P.3d 438. To find fundamental error, the jury instructions must be "so confusing and incomprehensible that a court cannot be certain that the jury found the essential elements under the facts of the case." *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775 (internal quotation marks and citation omitted).

In jury instruction error cases, we have found fundamental error where there was juror confusion due to instructions that omitted an essential element of a crime. *State v. Osborne*, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991); *State v. Castro*,

---

[1]We note that Defendant received a lesser-included offense instruction for kidnaping, and the record does contain a verdict form for that lesser-included offense.

2002-NMCA-093, ¶ 8, 132 N.M. 646, 53 P.3d 413; *State v. Armijo*, 1999-NMCA-087, ¶ 6, 127 N.M. 594, 985 P.2d 764; *State v. Acosta*, 1997-NMCA-035, ¶ 21, 123 N.M. 273, 939 P.2d 1081. We have also reversed due to inconsistencies between the crime as charged in the indictment and the crime as described in the jury instructions and verdict form. In *Davis*, the defendant was indicted for intentional child abuse, but the district court instructed the jury on both negligent and intentional child abuse. 2009-NMCA-067, ¶¶ 5-16. There, the jury found the defendant guilty of child abuse without designating whether it was negligent or intentional. *Id.* ¶ 6. We held that "[a]llowing [the d]efendant's conviction to stand where there is the possibility that he was convicted of a crime for which he was not charged would result in a miscarriage of justice." *Id.* ¶ 16.

We likewise conclude here that the inconsistency between the jury instructions and the verdict form amounts to fundamental error, as a reasonable juror would have been confused by the verdict form provided in this case. The verdict form only gave the option of convicting or finding Defendant not guilty of a crime upon which the jury was never instructed. The verdict form only permitted the jury to find Defendant guilty of aggravated battery upon a household member—an amalgamation of the instructions for aggravated battery with a deadly weapon and battery upon a household member. The jury was not even provided with the verdict form for the

6

misdemeanor battery upon a household member, for which they had received a step-down instruction. For these reasons, we cannot tell whether the jury intended to convict Defendant of aggravated battery with a deadly weapon or battery on a household member. This gives us grave doubts about the validity of the district court's interpretation of the verdict and subsequent sentencing of Defendant. We hold that this implicates Defendant's due process right to a fair trial. Nonetheless, it is clear that the jury intended to convict Defendant of one of these two crimes. Because the jury was instructed about the lesser-included offense, and Defendant had an opportunity to present a defense with regard to it, we reduce Defendant's conviction for aggravated battery on a household member to the lesser-included offense of battery on a household member. *Compare State v. Haynie*, 116 N.M. 746, 747-48, 867 P.2d 416, 417-18 (1994) (holding that an appellate court has the authority to remand for entry of judgment and resentencing when evidence supports a lesser-included offense), *and State v. Notah-Hunter*, 2005-NMCA-074, ¶¶ 25-29, 137 N.M. 597, 113 P.3d 867 (holding that an appellate court may remand for entry of judgment and resentencing when evidence supports a lesser-included offense, and the defendant had sufficient notice of and presented a defense to the lesser-included offense), *with State v. Villa*, 2004-NMSC-031, ¶¶ 8-18, 136 N.M. 367, 98 P.3d 1017 (concluding that an appellate court may not remand for entry of judgment of conviction and

resentencing for a lesser-included offense when the jury *was not instructed* on that lesser offense at trial). Because we reduce this felony conviction to a misdemeanor, we also reverse the four-year enhancement on Count 5 made pursuant to the Habitual Offender Act.

**B.     Double Jeopardy Violations**

We review double jeopardy claims de novo. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. "However, where factual issues are intertwined with the double jeopardy analysis, we review the trial court's fact determinations under a deferential substantial evidence standard of review." *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737. We will not reweigh the evidence or "substitute our judgment for that of the trial court, and all reasonable inferences supporting the fact findings will be accepted even if some evidence may have supported a contrary finding." *Id.* (citation omitted).

The right to be free from double jeopardy "protects against [(1)] a second prosecution for the same offense after acquittal[,] . . . [(2)] a second prosecution for the same offense after conviction[, a]nd . . . [(3)] multiple punishments for the same offense." *State v. Rodriguez*, 2005-NMSC-019, ¶ 6, 138 N.M. 21, 116 P.3d 92 (internal quotation marks and citation omitted). Within the category of multiple punishments, there are two types of situations prohibited by the double jeopardy

8

clause: double description cases and unit of prosecution cases. *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61. In double description cases, the defendant is improperly charged with multiple violations of multiple statutes for unitary conduct. *Id*. In unit of prosecution cases, the defendant is wrongfully charged with multiple violations of the same statute for unitary conduct. *Id*. Here, Defendant raises a double description issue with regard to the CSP II and kidnaping convictions, as he contends that there was unitary conduct and each crime was enhanced in degree by the other. Defendant also raises unit of prosecution issues with relation to his multiple convictions for aggravated assault, battery on a household member, and battery on a household member with a deadly weapon. We address each set of arguments in turn.

**1.      Double Description Charges:  Convictions for CSP II and Kidnaping**

Double jeopardy bars convictions where (1) the underlying conduct of the offenses is unitary, and (2) the Legislature did not intend to punish the conduct separately. *State v. Montoya*, 2011-NMCA-074, ¶ 30, 150 N.M. 415, 259 P.3d 820. We first engage in an analysis of whether the underlying conduct may be viewed as a single transaction. If it is not unitary, the convictions do not present a double jeopardy issue, and we inquire no further. *Swafford v. State*, 112 N.M. 3, 14, 810 P.2d 1223, 1234 (1991). "The issue of whether conduct is unitary under the first part of a

[double jeopardy] analysis requires a careful review of the evidence." *State v. Armendariz*, 2006-NMCA-152, ¶ 7, 140 N.M. 712, 148 P.3d 798. In analyzing whether the conduct is unitary, we "consider whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Schackow*, 2006-NMCA-123, ¶ 18, 140 N.M. 506, 143 P.3d 745 (internal quotation marks and citation omitted).

"Conduct is not unitary if sufficient indicia of distinctness separate the transaction into several acts. In making this determination, we evaluate separations in time and space as well as the quality and nature of the acts or the results involved." *Montoya*, 2011-NMCA-074, ¶ 31 (internal quotation marks and citations omitted). "[S]ufficient indicia of distinctness [exist] when the conviction is supported by at least two distinct acts or forces, one which completes the first crime and another which is used in conjunction with the subsequent crime. . . . [T]he key inquiry is whether the same force was used to commit both crimes." *Armendariz*, 2006-NMCA-152, ¶ 7. The type of force applied for each act is essential here because "[kidnaping] cannot be charged out of every CSP . . . without some force, restraint, or deception occurring either before or after the sexual penetration." *State v. Crain*, 1997-NMCA-101, ¶ 21, 124 N.M. 84, 946 P.2d 1095. "When there is evidence that the perpetrator forcibly abducted the victim before attempting sexual penetration or continued to use force or

10

restraint after the sex act was completed, however, we have rejected the proposition that the [kidnaping] is indistinguishable from the sex offense." *State v. Allen*, 2000-NMSC-002, ¶ 67, 128 N.M. 482, 994 P.2d 728. Where, as here, sufficient evidence demonstrates that the counts were sufficiently distinct, we will uphold Defendant's convictions. *State v. Dombos*, 2008-NMCA-035, ¶ 23, 143 N.M. 668, 180 P.3d 675; *State v. Martinez*, 2007-NMCA-160, ¶ 17, 143 N.M. 96, 173 P.3d 18.

In this case, sufficient evidence shows that Defendant committed two factually distinct kidnapings, one of which clearly supported his CSP II conviction. Moreover, the CSP had an independent and different factual basis from the kidnapings. Each of these three acts was distinct in time, location, and force.

To find Defendant guilty of kidnaping, the jury had to find beyond a reasonable doubt that on October 15, 2006, "[(1)] . . . [D]efendant restrained [or] transported [Victim] by force or intimidation; [and (2)] . . . [D]efendant intended to hold [Victim] against her will to inflict physical injury or sexual offen[s]e [against her.]" Kidnaping is complete upon Defendant's restraint of Victim with the intent to inflict a sexual offense or injury. *State v. Kersey*, 120 N.M. 517, 523, 903 P.2d 828, 834 (1995) ("Although [kidnaping] is a continuing offense, the conduct required to establish [kidnaping] was completed at the time [the d]efendant, with the intent to hold [the victim] for service, unlawfully and forcibly took him from the school."). Defendant's

11

intent to either injure or inflict a sexual offense upon Victim is evidenced by Defendant's actions toward Victim. *State v. Armijo*, 1997-NMCA-080, ¶ 20, 123 N.M. 690, 944 P.2d 919 (holding that the jury could infer the defendant's intent from his actions); *State v. Riley*, 2010-NMSC-005, ¶ 20, 147 N.M. 557, 226 P.3d 656.

Here, Defendant completed the first kidnaping just outside their home within the city of Clovis when he transported Victim by forcing her to drive him to two locations. This transportation was accomplished by intimidation, as Defendant beat Victim immediately prior to ordering her to drive. In addition, Defendant's intent to injure Victim can be inferred from his violent actions toward her. Before they got into the vehicle, Defendant repeatedly punched Victim in the head and face. This first kidnaping ended when Victim briefly escaped from Defendant by driving away when he exited the vehicle at the second location. At this point in time, Defendant had no restraint or control over Victim.

The second kidnaping, which was related to the CSP II conviction, occurred when Defendant took control of the vehicle and of Victim after she escaped. This kidnaping involved both restraint and transportation of Victim by force. Defendant restrained Victim by taking control of the vehicle, physically forcing her into the passenger seat and beating her. He then transported her to a remote location. Furthermore, this second kidnaping began in an entirely different part of the city of

Clovis than where the first began. It then continued through the completion of the rape, which happened in a remote location outside of Clovis somewhere within Curry County. Defendant's intent to commit a sexual offense against or injure Victim can be inferred by his beating and raping her during this kidnaping. After taking control of the vehicle, Defendant smashed Victim's head into both the windshield and dashboard of the vehicle, bit her, punched her, and then anally raped her.

We conclude that these kidnapings are factually distinct. Each took place in a different location, at a different time of the day, and by the application of different types of force toward Victim—intimidation and physical brute force. Moreover, the requisite intent for each kidnaping is inferred from different acts of violence that Defendant committed against Victim.

We next evaluate whether the CSP II (commission of a felony) is distinct from the first kidnaping. To be guilty of this crime, the jury had to find that, on October 15, 2006, "[(1)] . . . [D]efendant caused the insertion, to any extent, of his penis into the anus of [Victim]; [and (2)] . . . [D]efendant committed the act during the commission of a [kidnaping]."

Victim testified that Defendant penetrated her anus with his penis after he drove her to a remote location outside of Clovis. This testimony describes the CSP taking place while the second kidnaping was still on-going. The force used to commit the

13

CSP II was different in character than the force used to commit the first kidnaping. Defendant accomplished the first kidnaping by hitting, punching, and intimidating Victim. In contrast, the CSP II was accomplished by coercion rather than physical force. After arriving at the remote location outside of Clovis, Victim told Defendant that she would do anything to make him stop. Defendant indicated to Victim that he wanted to have sex with her. Victim then removed her own clothes and positioned herself over the front seat of the vehicle without any physical force from Defendant. Defendant accomplished the CSP II through intimidation and the implied threat of further violence.

Because the underlying conduct applicable to the CSP II and first kidnaping differ in time, location, and the type of force used, the conduct was not unitary. Thus, the convictions for these crimes do not violate Defendant's right to be protected from double jeopardy.

**2.      Unit of Prosecution Charges:  Multiple Assault and Battery Convictions**

Defendant argues that his convictions for two counts of aggravated assault, one count of aggravated battery on a household member, and six counts of battery on a household member violated his right to be protected from double jeopardy because the underlying conduct for each was unitary. Defendant contends that the events "were one continuous act, during which [Defendant]'s intent never changed[, and a]ny acts

that took place during that time should provide the basis for one count of aggravated battery and one count of aggravated assault." Because we have reduced the aggravated battery conviction to battery on a household member, we will treat that charge as another battery on a household member for unit of prosecution purposes, but refer to the charge as aggravated battery for discussion purposes.

Defendant presents this as a unit of prosecution inquiry, arguing that double jeopardy requires that all seven charged batteries be treated as one count of battery, and both aggravated assaults charged to be treated as one count of aggravated assault. Thus, we must "determin[e] whether the State's charging pattern suffered from multiplicity, [by] first . . . identify[ing] the appropriate unit of prosecution." *Herron v. State*, 111 N.M. 357, 359, 805 P.2d 624, 626 (1991) (footnote omitted). We review the statute for guidance as to what constitutes the unit of prosecution.

> If the statutory language spells out the unit of prosecution, then we
> follow the language, and the unit-of-prosecution inquiry is complete. If
> the language is not clear, . . . we determine whether a defendant's acts
> are separated by sufficient indicia of distinctness to justify multiple
> punishments under the same statute.

*State v. Bernal*, 2006-NMSC-050, ¶ 14, 140 N.M. 644, 146 P.3d 289 (internal quotation marks and citations omitted).

**a.      The Statutes Fail to Provide Guidance as to the Unit of Prosecution**

15

We turn now to the statutes in determining the appropriate unit of prosecution. In New Mexico, aggravated assault consists of "unlawfully assaulting or striking at another with a deadly weapon[.]" NMSA 1978, § 30-3-2(A) (1963). The definition of assault is "an attempt to commit a battery upon the person of another [or] any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery[.]" NMSA 1978, § 30-3-1(A) & (B) (1963). Thus, the elements of aggravated assault are the assault itself and Defendant's use of a deadly weapon. The statute provides us with no guidance in determining how many prosecution units are involved in this case based upon different assaults or different weapons.

Likewise, the battery against a household member statute provides little guidance as to the unit of prosecution. "Battery against a household member consists of the unlawful, intentional touching or application of force to the person of a household member, when done in a rude, insolent[,] or angry manner." NMSA 1978, § 30-3-15(A) (2001). Thus, the act of battery is composed of unlawful touching or an application of force to the person of another coupled with the appropriate intent. The battery statutes do not indicate how to differentiate separate batteries based upon intent, touching, or applications of force.

**b.** **The Facts Demonstrate That Some Underlying Conduct is Distinct and Some is Unitary**

16

Because neither the assault nor the battery statutes provide guidance as to the unit of prosecution, we must evaluate whether sufficient indicia of distinctness justify multiple punishments under the same statute. We perform a substantially similar unitary conduct analysis for unit of prosecution analysis as we did above for double description. *Bernal*, 2006-NMSC-050, ¶ 16. "In each case, we attempt to determine, based upon the specific facts . . . , whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent." *Id*. We analyze whether there is sufficient indicia of distinctness to separate the transaction into several acts by "looking at (1) temporal proximity of the acts; (2) location of the victim during each act; (3) existence of an intervening act; (4) sequencing of the acts; (5) the defendant's intent as evidenced by his conduct and utterances; and (6) the number of victims." *State v. Garcia*, 2009-NMCA-107, ¶ 10, 147 N.M. 150, 217 P.3d 1048. First, we examine the two assault charges. Then, we will evaluate the six battery charges for unitary conduct.

**i.	Assault Charges**

The State charged Defendant with two counts of aggravated assault by use of a deadly weapon. The jury instruction for the first count required the jury to find that on October 16, 2006, "[D]efendant pointed a handgun at the head of [Victim.]" The jury instructions identified the second count as the instance when, on October 16,

17

2006, "[D]efendant put a handgun in the mouth of [Victim.]"  The evidence informs us that the first assault occurred after Victim could not provide Defendant with her ex-boyfriend's address.  When she conveyed that she did not know his address, Defendant held the gun to Victim's head as she was driving the vehicle.  While holding the gun to her head, he insisted that she tell him where her ex-boyfriend lived.  Sometime later, when Victim had stopped the vehicle at a stop sign, Defendant told her to open her mouth, and he placed the handgun in her mouth, repeating that she "was [going] to quit playing with him."

We conclude that the facts establish that the assaults are distinct.  Although both assaults occurred in the same vehicle within what seems to be a short period of time, the evidence provided by the State sufficiently distinguishes the assaults in the manner of their commission, and the fact that they were not a continuous act.  Placing the gun to Victim's head while driving and then waiting until she stopped the vehicle to put the gun in her mouth are made distinct by a lapse of time, the act of waiting for the vehicle to stop, and different methods of committing the assault.  Thus, we conclude that the underlying conduct for the assault charges was not unitary and affirm both convictions.

**ii.    Battery Charges**

18

Defendant also challenges his charges for one count of aggravated battery and six counts of battery on a household member, arguing that the conduct was unitary and that only one count of battery on a household member should have been charged. The jury instructions clarify which acts were attributable to the charged batteries. On the charged count of aggravated battery, the jury was instructed that it must find that, on October 15, 2006, "[D]efendant touched or applied force to [Victim] with a deadly weapon . . . [using] a garden tool." The four jury instructions for battery upon a household member, occurring on October 15, 2006, required that the jury find that "[(1)] . . . [D]efendant intentionally touched or applied force to [Victim] by hitting her in the face while he was combing her hair; [(2)] . . . [D]efendant intentionally touched or applied force to [Victim] by striking her head into the dash board of a car; [(3)] . . . [D]efendant intentionally touched or applied force to [Victim] by biting her on the shoulder; [and (4)] . . . [D]efendant intentionally touched or applied force to [Victim] by pushing her head into the windshield of a [vehicle.]" The jury instructions for battery on a household member, occurring on October 16, 2006, required the jury to find that "[D]efendant intentionally touched or applied force to [Victim] by choking her[,]" and "[D]efendant intentionally touched or applied force to [Victim] by spitting in her face[.]"

19

For convenience, we address each battery in chronological order to determine whether each is distinguishable by time, location, intervening events, and intent. The first charged battery occurred at their home, sometime in the afternoon, when Defendant hit Victim in the face while combing her hair. At this point in time, Defendant accused Victim of cheating on him, evidencing his motivation for hitting her. Between the first and second batteries, Defendant forced Victim to drive to two different locations. At the second location, Victim temporarily escaped Defendant's control by driving away when he exited the vehicle. Upon regaining control of Victim and the vehicle, Defendant committed the second battery by pushing her head into the dashboard of the vehicle. From the intervening events, we conclude that substantial time and distance accumulated between the first and second batteries. Defendant's motive also appears to have changed as he beat Victim because he was angry that she drove away.

The third and fourth batteries happened after Defendant drove Victim to a remote location on a dirt road in Curry County between 11 p.m. and midnight. There, he bit Victim on the shoulder. Defendant pushed Victim's head into the windshield, cracking the glass. These two events clearly differ in time and location from the prior batteries, as they occurred after Defendant drove Victim outside of the city limits to a remote location. Thus, we conclude that the conduct at the remote location was

distinct from that which occurred within the city. With regard to the third and fourth batteries, we have difficulty separating the biting and the pushing into two separate batteries. Victim's testimony with regard to Defendant biting and pushing her into the windshield fails to provide us with an intervening event, lapse of time, change in location, or change in his intent. Both biting and pushing occur at the remote location within what appears to be a short span of time. It is not even clear if the biting or the pushing occurred first in the sequence of events. Thus, these should merge into one count.

The fifth battery occurred next in the sequence of events. After Defendant had anal sex with Victim, he stopped beating her, and they returned to their home. There, Defendant told Victim that he was going to hurt her leg because she hurt his when she forced him to jump on the hood of the vehicle earlier that day. Defendant then stabbed Victim in her left calf with a garden tool. This battery is clearly distinct from those that preceded it. The intervening events of the rape and the drive from the remote location outside of Clovis to their home distinguish the fifth battery from the other batteries in location and time. In addition, Defendant's reason for beating Victim substantially changed. With regard to this battery, Defendant stabbed Victim with a garden tool in retaliation for injuries he sustained earlier in the day. The other

batteries lack this intent to obtain revenge. Thus, we conclude that the fifth battery was distinct.

The last two counts occurred the next day on October 16. That morning, Defendant refused to let Victim go to work. Rather, he took her to magistrate court with him where he was scheduled to meet his defense attorney. After Defendant met with the attorney, they returned to their home. Defendant then began rifling through Victim's possessions and cell phone. Defendant found an old photo of Victim with an ex-boyfriend on her phone and again accused her of cheating on him. Defendant then began choking Victim. He repeatedly choked her until she lost consciousness, slapped her to wake her up, and then choked her again. We conclude that this battery stands alone from the others as distinct. A great deal of time passes between the previous battery and the choking, as Defendant slept through the night and then went to magistrate court between the batteries. Moreover, Defendant's intention no longer was to hurt Victim in retaliation for his leg injuries. As evidenced by his statements that prompted the battery, Defendant choked Victim because he believed she was cheating.

Finally, the last battery occurred when Defendant spit in Victim's face when she was packing to leave their home. After the choking incident, but before this last battery, Defendant obtained a handgun, had Victim drive him to her ex-boyfriend's

house, and held the handgun twice to her head. After Defendant returned home with Victim and she began to pack her bag, he spit in her face. This final battery is separated by significant time and several events from the preceding batteries. Defendant's state of mind also appears to have changed, as he no longer prevented Victim from leaving their home unaccompanied.

In conclusion, we hold that one of Defendant's battery on a household member convictions violates double jeopardy. Nonetheless, Defendant argues that this case as a whole resembles the facts in *State v. Mares*, 112 N.M. 193, 199, 812 P.2d 1341, 1347 (Ct. App. 1991) and, thus, we should find that all of the assault and battery conduct was a unitary violent rampage. In *Mares*, we held that "[t]he victim's testimony lacked detail. . . . These incidents took place over one violent rampage with little time between offensive contacts." *Id*. at 199-200, 812 P.2d at 1347-48. We held that we were unable to differentiate between the contacts and that using various methods to beat the victim was not sufficient evidence for the district court to conclude that there were separate attacks. *Id*. at 200, 812 P.2d at 1348. In contrast, evidence in the case before us today provides us with great detail about each battery. Defendant's violent acts spanned two days, occurred in several different locations, and were separated by periods of time during which he ceased to act violently. The motive

for his actions also appears to have varied from battery to battery. Thus, we conclude that this was not one violent rampage like that which occurred in *Mares*.

For the reasons stated above, we vacate Defendant's Count 9 battery of a household member conviction, which dealt with him pushing Victim into the windshield of a vehicle.

## C. Defendant Was Not Denied His Right to a Speedy Trial

Defendant contends that his right to a speedy trial was violated. "[T]he initial inquiry in speedy trial analysis is a determination as to whether the length of pretrial delay is presumptively prejudicial. [A] presumptively prejudicial length of delay is simply a triggering mechanism, requiring further inquiry into the [four] *Barker* factors." *State v. Montoya*, 2011-NMCA-074, ¶ 10, 150 N.M. 415, 259 P.3d 820. If the delay is presumptively prejudicial, we balance four factors to determine whether a speedy trial violation has occurred. The factors to be considered are "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *State v. Plouse*, 2003-NMCA-048, ¶ 34, 133 N.M. 495, 64 P.3d 522. "In considering each of these factors, we defer to the [district] court's factual findings[,] but review de novo the question of whether [the d]efendant's constitutional right [to a speedy trial] was violated." *State v. Brown*, 2003-NMCA-110, ¶ 11, 134 N.M. 356, 76 P.3d 1113.

In this case, Defendant contends that the pretrial delay was twenty-six months and, hence, presumptively prejudicial. *See State v. Garza*, 2009-NMSC-038, ¶¶ 47-48 146 N.M. 499, 212 P.3d 387 (holding that twelve months is presumptively prejudicial for simple cases, fifteen months is presumptively prejudicial for intermediate cases, and eighteen months is presumptively prejudicial for complex cases). In contrast, the

State argues that the delay lasted for approximately five and one half months. Even if we assume the delay was presumptively prejudicial, we conclude that Defendant's speedy trial right was not violated because Defendant's argument ultimately fails the *Barker* factors.

In *State v. Garza*, our Supreme Court held that with regard to the *Barker* factors, "a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." 2009-NMSC-038, ¶ 39, 146 N.M. 499, 212 P.3d 387. "The United States Supreme Court has identified three interests under which we analyze prejudice to the defendant: ([1]) to prevent oppressive pretrial incarceration; ([2]) to minimize anxiety and concern of the accused; and ([3]) to limit the possibility that the defense will be impaired." *Id.* ¶ 35 (internal quotation marks and citation omitted). With regard to the oppressive pretrial incarceration and the anxiety and concern of the accused, "[s]ome degree of oppression and anxiety is inherent for ever[y] defendant who is jailed while awaiting trial." *Id.* (alterations in original) (internal quotation marks and citation omitted). Therefore, we only weigh this factor in the defendant's favor when the oppressiveness and anxiety suffered is undue. *Id.* Furthermore, "[t]he oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial,

and what prejudicial effects the defendant has shown as a result of the incarceration." *Id.*

Defendant has the burden to demonstrate and substantiate prejudice. *Id.* ¶¶ 35-37. In the present case, Defendant asserts that he "has in actuality been prejudiced by the delay in this matter" without providing us any substantiation for this claim. Defendant has not pointed out what witness was unable to testify accurately, or how that impacted his case. Defendant also fails to demonstrate how his pretrial incarceration was undue or oppressive. We conclude that Defendant has not met his burden, as he has not made a particularized showing of prejudice. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice.").

We note that a defendant is not required to make a particularized showing of prejudice where the other *Barker* factors weigh heavily in his favor. *Garza*, 2009-NMSC-038, ¶ 39 (stating that "if the length of delay and the reasons for the delay weigh heavily in defendant's favor and defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated"). However, in the instant case, Defendant alleges a delay of twenty-six months. We conclude that this period of time is insufficient to weigh heavily in Defendant's favor. *See id.* ¶ 24 (citing *United*

*States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) for the proposition that a three-year and nine-month delay was too short to weigh heavily in the defendant's favor).  Because the three other *Barker* factors must weigh heavily in Defendant's favor, and the length of delay factor does not weigh in Defendant's favor, we do not need to analyze the reason for the delay or Defendant's assertion of his right to a speedy trial.  As a result, we hold that Defendant's failure to demonstrate a particularized showing of prejudice is determinative.  Defendant's speedy trial right was not violated.

**D.      Defendant Fails to Show How His Counsel Was Ineffective**

Defendant contends that his trial counsel was ineffective for failing to file a motion to dismiss for a speedy trial violation.  For Defendant to establish a prima facie case of ineffective assistance of counsel, he must show that (1) his counsel's performance fell below that of a reasonably competent attorney, and (2) he was prejudiced by the deficient performance.  *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729.  In the absence of proof that both defense counsel's performance was not reasonably competent, and the defense was prejudiced as a result, we presume counsel to be effective.  *See State v. Trujillo*, 2002-NMSC-005, ¶ 38, 131 N.M. 709, 42 P.3d 814 ("Assistance of counsel is presumed effective unless the defendant demonstrates both that counsel was not reasonably competent and that

counsel's incompetence caused the defendant prejudice." (internal quotation marks and citation omitted)); *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127 (providing that counsel is presumed competent). As we have held that Defendant's speedy trial right was not violated, and he provides us with no other basis for ineffective assistance of counsel, we conclude that defense counsel was effective.

**E.      Insufficiency of the Evidence to Convict**

Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), Defendant argues "that a rational fact-finder could not have determined beyond a reasonable doubt that [Defendant] was guilty of the crimes with which he was charged." As we review the case for sufficient evidence to support the verdict, we analyze

> whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused. When determining the sufficiency of the evidence, the court views the evidence in a light most favorable to the verdict, considering that the [s]tate has the burden of proof beyond a reasonable doubt.

*State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72 (citation omitted).

As we have analyzed the evidence for each charged count in our double jeopardy analysis above, we conclude that no further analysis of the facts is required. To the extent that Defendant argues insufficiency because a witness testified that he

29

did not observe bruises on Victim the day after the incident occurred, we view all of the evidence in the light most favorable to the verdict, and we note that other evidence proving the crimes clearly exists. Moreover, "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. After thorough examination of the record, we hold that sufficient evidence supports the verdicts rendered by the jury, save the verdict for one count of battery on a household member, which we reverse on double jeopardy grounds.

## III.    CONCLUSION

For the reasons stated above, we reverse one of Defendant's convictions for battery on a household member. Furthermore, we reduce Defendant's conviction for aggravated battery on a household member to battery on a household member, and reverse the Habitual Offender Act enhancement associated with that felony conviction. We remand to the district court for resentencing and entry of an amended judgment.

**IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

30

_____

**JONATHAN B. SUTIN, Judge**


_____

**CYNTHIA A. FRY, Judge**