Daniel W. DAUWE, Plaintiff–Appellant,

v.

Jim MUSANTE, Defendant–Appellee.

No. 03CA1421.

Colorado Court of Appeals,
Div. I.

Dec. 30, 2004.

As Modified on Denial of Rehearing
April 21, 2005.

Certiorari Denied Oct. 3, 2005.

Daniel W. Dauwe, Pro Se.

Pryor Johnson Montoya Carney & Karr, P.C., Elizabeth C. Moran, Felice S. Haas, Greenwood Village, Colorado, for Defendant–Appellee.

MARQUEZ, J.

Plaintiff, Daniel W. Dauwe, appeals the summary judgment in favor of defendant, Jim Musante. We affirm in part, vacate in part, and remand for further proceedings.

A special advocate appointed by the court in plaintiff's dissolution of marriage case recommended that plaintiff enroll in the KidsWin program run by defendant. After completing the program, plaintiff made three written requests to defendant for a copy of his records under § 25–1–802, C.R.S.2004. When defendant failed to comply, plaintiff filed suit against him, alleging a violation of § 25–1–802 for failure to provide his patient records and seeking appropriate relief including compensatory damages, costs, and an order to comply with the statute. After the suit was filed, defendant offered to provide a summary of plaintiff's records upon payment of $20, but plaintiff did not respond.

Defendant filed a motion, with an affidavit, to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted. Plaintiff filed a response and also filed an amended complaint alleging breach of confidentiality. The court allowed the amended complaint. After the parties submitted additional motions and responses with attachments, the court treated defendant's

motion as one for summary judgment and dismissed both claims.

## I.

■ Plaintiff contends that he is entitled to a copy of his records and that the trial court erred in determining there was no genuine issue of fact as to whether the records he requested under § 25–1–802 concerned "mental health problems." Defendant contends that, because they pertain to mental health problems, under the statute he is required to provide plaintiff only with a summary of his records upon payment of a reasonable fee. We conclude that further proceedings are required.

We review de novo an order granting summary judgment. *Vail/Arrowhead, Inc. v. Dist. Court,* 954 P.2d 608 (Colo.1998). Summary judgment is a drastic remedy and is only appropriate where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606 (Colo.1999). In analyzing a summary judgment motion, we view all facts in the light most favorable to the nonmoving party; we give the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the evidence; and we resolve all doubts as to the existence of a material fact against the moving party. *See Redmond v. Chains, Inc.,* 996 P.2d 759 (Colo. App.2000); *Schold v. Sawyer,* 944 P.2d 683 (Colo.App.1997).

Section 25–1–802 provides in pertinent part:

> Every patient record in the custody of … a person practicing psychotherapy … *except* records *pertaining to mental health problems,* shall be available to the patient upon submission of a written authorization-request for inspection of records … at reasonable times and upon reasonable notice. A summary of records pertaining to a patient's mental health problems may, upon written request and signed and dated authorization, be made available to the pa-

> tient … following termination of the treatment program.

(Emphasis added.)

Here, the summary judgment set forth the following facts as undisputed:

> The parties acknowledge that the records in question pertain to [p]laintiff's mental health problems … [p]laintiff has requested a copy of his records … [d]efendant has not provided [p]laintiff with a summary of his medical records … [and] [p]laintiff admits that he has not paid [d]efendant the $20 that [d]efendant requested for a copy of the summary of the records.

However, the statute does not define "mental health problems," and there is no evidence that plaintiff acknowledged the records pertained to such problems. As a result there is a dispute between the parties as to whether a copy of the records or only a summary should be provided to plaintiff.

Construction of a statute is a question of law. *Fogg v. Macaluso,* 892 P.2d 271 (Colo. 1995). When construing a statute, we must determine and give effect to the intent of the General Assembly. *Gianetto Oil Co. v. Indus. Claim Appeals Office,* 931 P.2d 570, 571 (Colo.App.1996). In the absence of a definition by the General Assembly, the words and phrases used are to be construed according to their generally accepted meaning. *Allstate Prods. Co. v. Colo. Dep't of Labor & Employment,* 782 P.2d 880, 882 (Colo.App.1989)(citing *Gonzales v. Indus. Comm'n,* 740 P.2d 999 (Colo.1987)(discussing constitutional vagueness)).

Defendant argues that plaintiff's records "pertained to therapy for mental health problems." For guidance, he points to a statutory definition of "clinical mental health counseling" that includes:

> (a) Assessment, counseling activities, consultation, and referral; and

> (b) Treatment, diagnosis, testing, assessment, psychotherapy, or counseling in a professional relationship to assist individuals or groups to alleviate mental and emotional disorders, understand unconscious or conscious motivation, resolve emotional, relationship, or attitudinal conflicts, or modify behaviors

that interfere with effective emotional, social, or intellectual functioning.

Section 12–43–601(2), C.R.S.2004.

Defendant also points out that as a licensed counselor he provides "professional counseling," which means

activities that assist the person receiving counseling in developing an understanding of personal, emotional, social, educational, alcohol and substance abuse, domestic violence, and vocational development ... and in planning and effecting actions to increase functioning or gain control of his or her behavior in such areas. Such activities include, but are not limited to, skill-building in communications, decision-making, and problem-solving, clarifying values, promoting adaptation to loss and other life changes, developing social skills, restructuring cognitive patterns, defining educational and career goals, and facilitating adjustment to personal crises and conflicts.

Section 12–43–601(5)(a)(I), C.R.S.2004.

Additionally, defendant notes that while he is a licensed professional counselor, the disclosure provided to plaintiff refers to "psychotherapy." Section 12–43–701(3), C.R.S. 2004, defines "psychotherapy" as

the treatment, diagnosis, testing, assessment, or counseling in a professional relationship to assist individuals or groups to alleviate mental disorders, understand unconscious or conscious motivation, resolve emotional, relationship, or attitudinal conflicts, or modify behaviors which interfere with effective emotional, social, or intellectual functioning. Psychotherapy follows a planned procedure of intervention which takes place on a regular basis, over a period of time.

Plaintiff does not dispute defendant's status as a psychotherapist, but argues that these records are not mental health records. His requests to defendant and his amended complaint refer to "patient records." He asserts they are records kept as a result of his participation in the KidsWin program, which provides counseling beyond mental health problems. He contends the program description does not limit itself to mental health problems, and defendant is a licensed counselor as well as a practicing psychotherapist whose duties go far beyond solely resolving or discussing mental health problems. As stated in a description of the program submitted by defendant, KidsWin is "designed to encourage co-parents to learn behaviors which support healthy child/family relationships, especially when an atmosphere of disturbing conflict, alienation, or emotional turmoil exists." The program consists of weekly group psychotherapy sessions, which focus on presenting techniques that can be put to use by participants.

Thus, central to the resolution of the issues before us is a determination of the meaning of "mental health problems." We conclude the record does not support a summary judgment determination that plaintiff acknowledges the records pertain to his mental health problems.

By using the word "except," § 25–1–802 recognizes a distinction between records pertaining to mental health problems and other records in the custody of a psychotherapist. Records that do not address mental health problems are not subject to the statutory limitations and should be released. The definitions defendant proffers do not use the term "mental health," and the "professional counseling" definition uses terms such as "skill-building," "decision-making," "problem-solving," and other common life skills. It is conceivable that not all matters addressed in the KidsWin program, and therefore not all the records, are directed solely at mental health problems.

The legislative history of § 25–1–802 does not define the term "mental health problems." Prior to its amendment in 1997, § 25–1–802 "except[ed] records pertaining to psychiatric or psychological problems." HB 1157 was amended on third reading to allow a "technical" substitution of the term "mental health" for "psychiatric or psychological" problems.

The discussion in the third reading contains the following:

Senator Tanner: I need for [sic] an amendment on third reading, a technical amendment.

Senate Body Leader (to Senator Tanner): Would you explain to the body the need for that third reading amendment?

Senator Tanner: The only thing we are doing, we are exchanging psychological and substituting mental health. This is the word that they use now because marriage counselors and a lot of other professionals in the mental health field come[ ] under this and they don't want the word psychological used. They want the word mental health—so that is what we are doing . . . substituting.

Hearings on H.B. 1157 before the Senate Health, Environment, Welfare & Institutions Committee, 61st. General Assembly, 1st. Session (March 24, 1997).

In our view, this discussion reflects that the term "mental health" was simply a term substituted for "psychiatric or psychological problems." There is no indication that a new meaning for purposes of this statute is intended. Nor does the discussion imply that the term includes ordinary day-to-day life adjustment situations.

Colorado cases have not defined the term "mental health problems," but they have used the term in connection with psychological or psychiatric problems. *See People v. Reynolds,* 933 P.2d 1295, 1303 (Colo.1997)(hearing board "found the following with respect to the respondent's mental health problems . . . the respondent's wife . . . arranged for him to see . . . a psychologist" who "diagnosed the respondent as suffering from severe depression"); *Gray v. Dist. Court,* 884 P.2d 286, 288 (Colo.1994)("motion to suppress medical records of [defendant's] psychiatric hospitalization in 1990, when at such time, he was evaluated and treated for mental health problems"); *Ferguson v. People,* 824 P.2d 803, 806 (Colo.1992)("legitimate governmental interest of protecting psychotherapy clients, many of whom may have emotional or mental health problems for which they seek assistance from the psychotherapist"); *People v. Pierson,* 670 P.2d 770, 777 (Colo.1983)("defendant has a long history of mental health problems which required treatment at mental hospitals"); *In re Marriage of Anderson,* 37 Colo.App. 55, 57, 541 P.2d 1274, 1276 (1975) ("mental health problems of the oldest child who has been under the care of a psychiatrist").

We conclude the question whether the records pertain to mental health problems can only be determined by a hearing allowing both parties to present evidence on their respective positions and, if requested, an in camera review of the records by the trial court. The record reflects that the trial court granted plaintiff's request to include the records under seal, but indicated in its order that it did not review them.

Because there exist unresolved issues of fact as to whether plaintiff's records pertain to mental health problems, we must remand the case to the trial court for further consideration.

In light of our disposition, we need not consider plaintiff's related contentions as to (1) whether the holder of patient records may charge for his time to compile a summary of records if he refuses to provide the original records; and (2) whether the $20 fee required from plaintiff before defendant would provide a summary was reasonable.

## II.

We reject plaintiff's two theories in support of a private cause of action for a violation of confidential information.

### A. Common Law Tort

■ With respect to his breach of confidentiality claim, plaintiff contends he has a cause of action under common law tort. Under the facts presented here, we disagree.

Plaintiff amended complaint filed December 30, 2002 alleged a violation of his confidentiality in therapy with a third party. Although he filed a number of motions, responses, and other documents with the court, plaintiff did not assert that his claim was a common law tort claim until after the court proposed its analysis of § 12-43-218, C.R.S. 2004, in May 2003 and allowed the parties to respond. Even then, plaintiff's response stated only that '[v]iolation of confidentiality is a common law tort claim based on failure to provide a standard of care

owed to a client," and he provided no authority to support his claim. The trial court held that plaintiff does not have a common law tort claim.

On appeal, plaintiff cites authorities from other jurisdictions, but none from Colorado. We note that a division of this court has held that the breach of a duty not to disclose confidential information gives rise to an action in tort with respect to bank records of a person's financial transactions. *Rubenstein v. S. Denver Nat'l Bank*, 762 P.2d 755 (Colo. App. 1988).

However, even if we assume without deciding that such a claim may be asserted, plaintiff's claim fails. On appeal, plaintiff concedes that he never claimed a cause of action arising from § 12-43-218 and admits the statute does not create a cause of action.

Moreover, from a review of authorities from other jurisdictions, it appears the elements for common law tort claim would require the plaintiff to prove unauthorized, unprivileged disclosure to a third party of confidential information, unless the disclosure is compelled by law or is in the patient's or the public's interest, and damages suffered by the plaintiff as a direct result of such disclosure. See *Fierstein v. DePaul Health Ctr.*, 24 S.W.3d 220 (Mo. Ct. App. 2000); *Biddle v. Warren Gen. Hosp.*, 715 N.E.2d 518 (Ohio 1999); *McCormick v. England*, 494 S.E.2d 431 (S.C. Ct. App. 1997).

Here, defendant's alleged violation is based solely on a special advocate report filed with the court in March 2002, which contains the following statement: "Facilitator Jim Musante stated to [the special advocate] (2/28/02) that Mr. Dauwe is 'listening' and appears 'intrigued' by the group class but participates marginally." In our view, the statement attributed to defendant does not constitute disclosure of confidential information. The statement does not disclose mental health conditions or confidential information received during the course of treatment. See *Runyon v. Smith*, 322 N.J.Super. 236, 730 A.2d 881 (1999); *McCormick v. England, supra*.

Plaintiff's reliance on *People v. Covington*, 19 P.3d 15 (Colo. 2001), for the proposition that the physician-patient privilege applies to observations as well as actual communications is misplaced. Unlike the claim here, *Covington* involved the statutory physician-patient privilege and the admission into evidence of photographs of a victim's injuries taken by a physician's assistant.

When a statute does not expressly provide for a private cause of action, a court must consider three factors in determining whether a plaintiff has a private cause of action based on a violation of the statute: "whether the plaintiff is within the class of persons intended to be benefited by the legislative enactment; whether the legislature intended to create, albeit implicitly, a private right of action; and whether an implied civil remedy would be consistent with the purposes of the legislative scheme." *Gerrity Oil & Gas Corp. v. Magness, supra*, 946 P.2d at 923 (quoting *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 911 (Colo.1992)).

Nonetheless, when the legislature provides administrative remedies to enforce a statute's provisions, this decision "is consistent with a legislative intent to preclude a private civil remedy for breach of the statutory duty." *Gerrity Oil & Gas Corp. v. Magness, supra*, 946 P.2d at 924 (quoting *Allstate Ins. Co. v. Parfrey, supra*, 830 P.2d at 910); *see Bd. of County Comm'rs v. Moreland*, 764 P.2d 812, 818–19 (Colo.1988) (when remedies other than private damages are specifically provided for in the statute, "[t]his reflects that the state legislature ... gave thought to the issue of civil liability but made no provision for imposition of such liability").

Defendant's argument regarding a need for expert testimony and a certificate of review, as required by § 13–20–602, C.R.S. 2004, was not presented to the trial court and is not relevant to our determination.

## B. Breach of Contract

Plaintiff also claims damages under breach of contract based on defendant's promise of confidentiality. However, this claim is not in plaintiff's amended complaint and was not addressed by the trial court. Plaintiff's amended complaint asks the court to "apply

appropriate relief and remedy as allowable under the [s]tatutes, including compensatory damages, court costs, and an order compelling the [d]efendant to comply with the applicable statute." Plaintiff refers to a breach of contract claim in his response to the May 21 order, but this was not an issue before the trial court. Thus, in light of the record we do not address this claim any further. *See Krystkowiak v. W.O. Brisben Cos.*, 90 P.3d 859, 864 n. 5 (Colo.2004); *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718 (Colo.1992).

In view of our disposition, we need not address plaintiff's argument that the court erred in concluding that plaintiff's confidentiality was waived in the family law case.

### III.

Plaintiff argues that the trial court erred in taking judicial notice of the dissolution court file to review the sealed special advocate report. Under the circumstances here, we agree.

Trial courts may take judicial notice of facts not subject to reasonable dispute that are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." CRE 201(b). A court may take judicial notice of its own records and adopt factual findings from a previous case as long as the previous case involved the same parties and the same issue.

*Mun. Subdistrict v. OXY USA, Inc.*, 990 P.2d 701, 711 (Colo.1999). However, a court may not take notice of facts on the issue the parties are litigating. *Mun. Subdistrict v. OXY USA, Inc., supra*, 990 P.2d at 711.

Here, we cannot determine what information from the dissolution court file the trial court considered or why the trial court took judicial notice, because the record does not reflect a request by either party to do so. Generally, a court must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in determining whether to grant a motion for summary judgment. C.R.C.P. 56(c); *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo.2003). In view of the state of the record, we do not address this question any further.

The judgment is affirmed to the extent it dismisses plaintiff's claim for breach of confidentiality. The judgment is vacated in all other respects, and the case is remanded for further proceedings consistent with this opinion.

Judge CASEBOLT and Judge ROY concur.