This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                              **NO.  30,826**

**ROBERT MONTENEGRO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Lisa C. Schultz, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Robert Montenegro (Defendant) appeals from his conviction for six offenses arising from his participation in a carjacking. Defendant makes three arguments on appeal. First, Defendant contends his two convictions for aggravated battery violate the constitutional protections against double jeopardy. Second, Defendant contends the trial court erred in denying his motions for directed verdict because the evidence was insufficient to support his conviction. Third, Defendant claims he received ineffective assistance of counsel. We reject Defendant's arguments and affirm his conviction.

## I. BACKGROUND

Early in the morning on Sunday, July 19, 2009, Aaron Olivas was standing outside of his vehicle, a Ford Bronco, on Castenada Road in the desert near Hatch, New Mexico. He was locking the wheels of his vehicle in preparation for engaging the four-wheel drive to drive up a steep hill. He was accompanied by his wife, Delilah Rios, and her friend, Kassaundra Trujillo, both of whom were standing outside the vehicle on the passenger side. A grey Cadillac pulled up next to the Bronco. Juan Carlos Contreras was driving the Cadillac. Defendant was riding in the passenger seat and Saul Perez, Justin Garcia, and Isaias Porras were riding in the back seat. When they saw the Bronco stopped alongside the road, Defendant told Contreras to stop the Cadillac and said, "Let's get this guy."

Contreras testified that he exited the Cadillac and hit Olivas after someone told him to do so. Porras and Defendant also exited the Cadillac. Defendant opened the front door of the Bronco and sat in the driver's seat while Porras hit and kicked Olivas. Rios and Trujillo ran away from the vehicles. Contreras got back in the Cadillac and drove it closer to the Bronco. He yelled, "Let's go." Porras then took a gun from his pants and shot Olivas in the head. Olivas fell to the ground and Porras ran back to the Cadillac and jumped in the passenger seat. Defendant backed the Bronco over Olivas's legs, hit the Cadillac's fender, then drove forward over Olivas's torso. Contreras drove the Cadillac away from the scene, and Defendant followed. Rios and Trujillo saw both vehicles drive away and called 911. They returned to the road and found Olivas lying on the ground. The parties stipulated at trial that Olivas sustained injuries constituting great bodily harm.

Contreras stopped the Cadillac after a little while and let Perez out. The Bronco passed the Cadillac while it was stopped. After approximately half a mile, Defendant stopped the Bronco, and Contreras pulled up next to the Bronco. Porras exited the Cadillac and entered the passenger side of the Bronco. Contreras drove off in the Cadillac, and Defendant followed in the Bronco.

Doña Ana County Sheriff's Deputy Lawrence Louick responded to the initial call from dispatch. He pursued the Bronco for several miles at speeds exceeding eighty miles per hour. After requesting backup, Deputy Louick was joined by Border

3

Patrol Agent Robert Turck. Agent Turck helped stop the Bronco and saw two people exit the Bronco. One person ran away. The other, Porras, surrendered by lying on the ground next to the Bronco. The officers arrested Porras, but did not pursue the person who fled for officer safety reasons. The Bronco had blood stains outside and inside the driver's door and on the driver's side upholstery. Based on information received from the Truth or Consequences Police Department, Defendant was identified as a possible suspect.

Border Patrol agents with expertise in tracking, assisted by members of the Doña Ana County Sheriff's Department, followed a trail left by the suspect fleeing the Bronco. They lost the trail on rocky terrain on a hilltop from which they were able to observe three residences, including the house of Defendant's aunt, Carmen Aguilera. Aguilera testified that Defendant appeared unexpectedly at her house, arriving on foot, at approximately 3:00 a.m. on July 19. She was sitting outside with her boyfriend at the time.

Defendant was arrested at Aguilera's home later in the morning after officers knocked on the door for approximately one hour without an answer. Deputy Louick testified that Defendant appeared "very clean" and "like he'd maybe taken a shower." He had some red scrapes and scratches on his shins that were "no longer bleeding" and "had begun to scab over." The deputy testified that the injuries appeared "very recent." A search of Aguilera's home revealed a washer and dryer. The officers

located a pair of white sneakers close to the washer and dryer that were wet, clean, and unlaced. They also found shorts and a black t-shirt in the washer, sitting in murky water. There was a brown leaf stuck to one of the items of clothing. Aguilera testified that she was the only one who did laundry at her house and had last done laundry on the Wednesday before the carjacking.

The Cadillac involved in the carjacking was later found and was identified as belonging to Contreras and/or Porras. Angela Contreras, Juan Contreras's wife, testified that Defendant and Porras visited her husband at their home on the evening of July 18. Defendant and Porras left for a short time, then returned and left the Contreras's house with Juan Contreras later in the evening.

Contreras testified against Defendant at trial. After describing the carjacking, Contreras testified about his plea agreement. He pled guilty to armed robbery, conspiracy to commit armed robbery, and aggravated battery, in exchange for dismissal of two counts and the firearm enhancements. When questioned about his understanding of the plea agreement, Contreras stated he was hoping for "the minimum sentence." On cross-examination, Contreras said he was "hopeful to get probation" and said he told the defense investigator he was going to get probation.

At the close of the State's case, Defendant moved for a directed verdict on all six charges, arguing the State failed to offer sufficient evidence to support his conviction. The trial court denied the motion. Defendant renewed his motion at the

close of all the evidence, and the court denied the renewed motion. Defendant was convicted on all counts: (1) armed robbery (firearm enhancement); (2) conspiracy to commit armed robbery; (3) aggravated battery with a deadly weapon (firearm enhancement); (4) aggravated battery with a deadly weapon; (5) tampering with evidence; and (6) resisting, evading, or obstructing an officer. He filed a timely appeal, challenging his conviction on the basis of double jeopardy, sufficiency of the evidence, and ineffective assistance of counsel.

## II.    DISCUSSION

### A.    Double Jeopardy

Defendant contends his two convictions for aggravated battery with a deadly weapon violate the double jeopardy clauses of the United States and New Mexico Constitutions. U.S. Const. amend. V; N.M. Const. art. II, § 15. Double jeopardy affords a criminal defendant three layers of protection. It protects against (1) "a second prosecution for the same offense after acquittal"; (2) "a second prosecution for the same offense after conviction"; and (3) "multiple punishments for the same offense." *Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991) (internal quotation marks omitted) (quoting *N.C. v. Pearce*, 395 U.S. 711, 717 (1969)). The third level of protection has been divided into two categories: (1) "'unit of prosecution' cases . . . in which a defendant has been charged with multiple violations of a single statute based on a single course of conduct"; and (2) "'double description'

6

cases . . . in which a defendant is charged with violations of multiple statutes for the same conduct[.]" (citation omitted). *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61.

Defendant raises a unit of prosecution challenge. He claims that his conduct during the carjacking can support only one count of aggravated battery under NMSA 1978, Section 30-3-5 (1969). In analyzing a unit-of-prosecution claim, we undertake a two-step analysis. We first review the statutory language. "If the statutory language spells out the unit of prosecution, then we follow the language, and the unit-of-prosecution inquiry is complete." *State v. Bernal*, 2006-NMSC-050, ¶ 14, 140 N.M. 644, 146 P.3d 289. "If the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments under the same statute." *Id.* (quoting *State v. Barr*, 1999-NMCA-081, ¶ 15, 127 N.M. 504, 984 P.2d 185). "If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the [L]egislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes." *Id.*

Section 30-3-5(A) defines aggravated battery as "the unlawful touching or application of force to the person of another with intent to injure that person or another." The State contends that this language spells out the unit of prosecution as "each unlawful touching or application of force." We disagree. In *Herron v. State*,

7

the New Mexico Supreme Court analyzed the language of New Mexico's criminal sexual penetration statute and concluded the statute did not "punish separately each penetration occurring during a continuous attack absent proof that each act of penetration is in some sense distinct from the others."   111 N.M. 357, 361, 805 P.2d 624, 628 (1991).  In *State v. Mares*, we considered a unit-of-prosecution argument involving multiple batteries and "adopt[ed] the same approach to allegations of multiple batteries" as the *Herron* court adopted in its analysis of multiple penetrations. *Mares*, 112 N.M. 193, 199, 812 P.2d 1341, 1347 (Ct. App. 1991).  We resolved the defendant's double jeopardy claim in *Mares* by considering whether his acts were sufficiently distinct to justify multiple punishments.  *See id.*  In subsequent cases, we have continued to analyze the indicia of distinctness factors in considering double jeopardy challenges to battery convictions.  *See, e.g.*, *State v. Garcia*, 2009-NMCA-107, ¶ 10, 147 N.M. 150, 217 P.3d 1048 (reviewing the indicia of distinctness factors where the defendant challenged his convictions of petty misdemeanor battery and aggravated battery); *State v. Stewart*, 2005-NMCA-126, ¶ 14, 138 N.M. 500, 122 P.3d 1269 (reviewing the indicia of distinctness factors where neither party addressed the issue of whether the unit of prosecution is clearly defined in New Mexico's statute defining battery against a household member).

We thus proceed to the second part of our unit-of-prosecution analysis and consider whether Defendant's acts were separated by sufficient indicia of distinctness

8

to justify multiple punishments. *See Bernal*, 2006-NMSC-050, ¶ 14. In *State v. Dominguez*, the New Mexico Supreme Court listed the following indicia of distinctness factors:

> [T]he temporal proximity of the acts, the spatial proximity of the acts, the similarity of the acts, the location of the victim at the time of the acts, the identity and number of victims for each act, the identity and number of perpetrators for each act, the existence of any intervening events, the sequence of the acts, and the defendant's mental state or objective during each act.

2005-NMSC-001, ¶ 23, 137 N.M. 1, 106 P.3d 563.

The jury was instructed that the two charges of aggravated battery against Defendant were based on two distinct acts. Count Three involved the touching or application of force to the victim "by shooting him or striking [him] with a firearm." Count Four involved the touching or application of force to the victim using a vehicle as a deadly weapon. The jury was also instructed it could find Defendant guilty even if he did not do the act constituting the crime if, *inter alia*, he "helped, encouraged[,] or caused the crime to be committed." Defendant contends the two batteries were unitary, rather than distinct, because they "were continuous and sequential, occurring over a short period of time, and with one mental state[.]" He relies principally on *Garcia* and *Mares*.

In *Garcia*, we held the defendant could not be convicted of petty misdemeanor battery and aggravated battery where the record indicated the two charged acts

9

"occurred close in time and sequence, in one location, with one victim." 2009-NMCA-107, ¶ 13. We explained that "[t]he evidence indicates [the d]efendant was continually and sequentially progressing from lesser force to more forceful harm over a very short period of time, all resulting without any apparent change in [the d]efendant's state of mind." *Id.* ¶ 16. In *Mares*, we held "the evidence at trial would not sustain a verdict of multiple batteries" where the defendant choked and hit the victim "over one violent rampage with little time between offensive contacts." 112 N.M. at 199-200, 812 P.2d at 1347-48. We noted the record did not provide details regarding the extent of intervention and any changed motive during the course of the attack. We explained that "[t]he only factor weighing in favor of separate offenses [was] the various methods by which [the] defendant battered the victim." *Id.* at 200, 812 P.3d at 1348.

Both *Garcia* and *Mares* involved a single perpetrator and a single weapon. Here, the two battery charges were based on acts committed by two different people, Defendant and Porras, with two different weapons, the Bronco and the firearm. While the acts occurred in relative temporal and geographic proximity and involved only one victim, Defendant and Porras had different motives. Porras battered Olivas with the firearm during the initial struggle over control of the Bronco. Defendant battered Olivas with the Bronco while leaving the scene. This is not a single attack progressing in force like we considered in *Garcia*; nor is it a single violent rampage

10

like we considered in *Mares*. Instead, as the jury found, Defendant committed two distinct acts of aggravated battery. We have reached similar results in cases in which charges are based on multiple perpetrators and multiple weapons. *See, e.g.*, *Bernal*, 2006-NMSC-050, ¶¶ 20-22 (holding the acts at issue were distinct where there were two victims against whom "the assailants used a different type of force" in different locations); *Dominguez*, 2005-NMSC-001, ¶ 24 (holding the acts at issue were distinct where there were multiple victims shot with different guns in different locations and the evidence supported "a reasonable inference that different principals shot different victims"). Because the two charges of aggravated battery were based on distinct acts, we reject Defendant's double jeopardy challenge.

**B.      Sufficiency of the Evidence**

Defendant claims the evidence presented at trial was insufficient to support his conviction on any of the six counts. "[O]ur review for sufficiency of the evidence is deferential to the jury's findings." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057. We review direct and circumstantial evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* (internal quotation marks and citation omitted). "So long as a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction, we will not upset a jury's conclusions." *Id.* (internal quotation marks and citation omitted).

11

In challenging the sufficiency of the evidence, Defendant points out that there was little direct evidence. The circumstantial evidence, in particular, the testimony of Contreras, was not credible. Contreras entered into a plea agreement with the State and, according to Defendant, was biased and had a motive to lie. Contreras's testimony at trial differed from the information he provided to law enforcement immediately following the carjacking when he denied any involvement. Defendant relies principally on *State v. Armijo*, but that case is inapposite. 35 N.M. 533, 2 P.2d 1075 (1931).

In *Armijo*, the New Mexico Supreme Court granted the defendant's motion for rehearing, concluding that the description of events provided by the accessory witness at trial was "inherently improbable." 35 N.M. at 542, 2 P.2d at 1080. The Court explained its holding did not change the general rule that "an appellate court is powerless to interfere with a verdict of guilty" even where the jury relied on testimony of a witness accomplice whose testimony was impeached. *Id.* at 541, 2 P.2d at 1079. The Court noted "[i]t is not unusual for true confessions to follow false denials" and "for a participant in a crime to abandon an early determination to protect his associates." *Id.* at 541-42, 2 P.2d at 1079-80. The *Armijo* Court granted the defendant's motion after concluding "the jury . . . failed to perform its proper function" because "[t]he verdict rest[ed] upon evidence which fail[ed] to meet any test of truth." *Id.* at 543-44, 2 P.2d at 1080.

Here, Contreras's testimony was corroborated by other witnesses and is not inherently improbable. Olivas, Rios, and Trujillo, testified to a similar sequence of events as Contreras. While they could not identify Defendant, or anyone else involved in the carjacking because it was dark, they testified there were multiple individuals in the Cadillac, three of whom took an active role in the carjacking. Border Patrol Agent Turck observed two people exit the Bronco. Porras surrendered next to the Bronco, and Defendant was located a few hours later at Aguilera's house, which was within walking distance of the Bronco. Aguilera testified that Defendant arrived unexpectedly at her house, on foot, at approximately 3:00 a.m. on July 19. Defendant was found at Aguilera's house with scrapes and scratches on his legs, recently showered, and with dirty clothes in the laundry.

Unlike the testimony of the accomplice in *Armijo*, Contreras's testimony describes a probable sequence of events. The jury heard testimony about Contreras's plea agreement, and defense counsel questioned Contreras about his earlier inconsistent statements and his possible bias and motive to lie. As we have explained previously, "[t]he jury alone is the judge of the credibility of the witnesses and determines the weight afforded to testimony taking into account, among other things, any biases or prejudices the witness may have." *State v. Stampley*, 1999-NMSC-027, ¶ 34, 127 N.M. 426, 982 P.2d 477. We will not discount Contreras's testimony as a matter of law. We will proceed to review each count in turn.

13

**1.      Armed Robbery and Conspiracy to Commit Armed Robbery**

Armed robbery is defined as "the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence . . . while armed with a deadly weapon." NMSA 1978, § 30-16-2 (1973). Conspiracy to commit armed robbery is defined as "knowingly combining with another for the purpose of committing" the offense of armed robbery. NMSA 1978, § 30-28-2(A) (1979). The jury was instructed that the armed robbery count was based on Defendant's alleged act of taking and carrying away the Bronco from Olivas or from his immediate control, intending to permanently deprive him of the vehicle. The jury was instructed that the conspiracy count was based on Defendant's alleged act of entering into an agreement with another person to commit armed robbery and intending, along with the other person, to commit armed robbery.

Defendant contends there was insufficient evidence to establish he was involved in the carjacking or was at the scene of the crime. We disagree. Contreras's wife testified that her husband left their house on the evening of July 18 with Defendant and Porras. Olivas, Rios, and Trujillo testified that there were three individuals actively involved in the carjacking. Contreras testified that Defendant was one of the three individuals involved in the carjacking. In addition, there was evidence from which the jury could reasonably infer that Defendant was involved in the carjacking because he was driving the Bronco at the time it was stopped. Defendant points to the

14

fact that his fingerprints were not found on the Bronco. That evidence is no more probative than the testimony at trial revealing that fingerprints were lifted from the Bronco, but were not sufficient quality to allow for fingerprint comparison.

Defendant also argues there was insufficient evidence that he possessed the requisite mental state to be convicted of armed robbery or conspiracy to commit armed robbery. Again, we disagree. While there was no direct evidence of Defendant's intent, there rarely is. *See State v. Durant*, 2000-NMCA-066, ¶ 15, 129 N.M. 345, 7 P.3d 495 (recognizing "[i]ntent can rarely be proved directly and often is proved by circumstantial evidence"). Here, there was sufficient circumstantial evidence from which the jury could find that Defendant got into the Bronco at the beginning of the carjacking and drove the Bronco away after Olivas was shot, intending to permanently deprive him of the vehicle. As for the conspiracy charge, the jury could reasonably infer from the actions of Defendant, Porras, and Contreras that Defendant entered into an agreement with Porras and/or Contreras to commit armed robbery and intended to commit armed robbery. *See State v. Johnson*, 2004-NMSC-029, ¶ 49, 136 N.M. 348, 98 P.3d 998 (explaining that the requisite agreement to support a conspiracy conviction "may be in the form of a mutually implied understanding and may be inferred from circumstantial evidence").

**2.    Aggravated Battery**

Aggravated battery is defined as "the unlawful touching or application of force to the person of another with intent to injure that person or another." NMSA 1978, § 30-3-5(A) (1969). Defendant was charged with one count of aggravated battery based on Porras's use of the firearm as a deadly weapon. He was charged with another count of aggravated battery based on his use of the Ford Bronco as a deadly weapon. The jury was instructed that it could find Defendant guilty if, though he did not himself commit the acts constituting the crime, he "helped, encouraged[,] or caused the crime to be committed."

Defendant argues the State did not offer sufficient evidence to prove he committed either count of aggravated battery because these counts were supported only by the testimony of Contreras. As discussed previously, it was for the jury to determine the weight to afford to Contreras's testimony, and we will not second-guess the jury's determination on appeal. Morever, Contreras's testimony was supported by other evidence indicating that Defendant battered Olivas with the Bronco and helped, encouraged, or caused Porras to batter Olivas with the firearm.

**3.     Tampering With Evidence**

Tampering with evidence is defined, in pertinent part, as "destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution[,] or conviction of any person." NMSA 1978, § 30-22-5(A) (2003). The jury was instructed that this charge was based on Defendant's

16

alleged conduct of destroying, changing, hiding, or placing his clothes in the washer at Aguilera's house or hiding them to prevent his apprehension, prosecution, or conviction. Defendant acknowledges "[a]n overt act may have occurred" but contends there was insufficient evidence to tie that act to him and thus insufficient evidence from which to defer the necessary intent. Again, we disagree.

The State presented evidence from which the jury could find that Defendant either washed his clothes or hid them in the washer at Aguilera's house on the morning of July 19. Officers searching Aguilera's home found shorts and a black t-shirt in the washer, sitting in murky water. Aguilera testified that she was the only one who did laundry at her house and had last done laundry on the Wednesday before the carjacking. She also testified that she did not know anything about the clothes found in the washer.

Defendant contends the clothes could have belonged to Aguilera's boyfriend or her brother, who had recently visited. Defendant also complains about the State's failure to prove that the clothing found in the washer was his size. These were questions for the jury to decide, and we will not upset the verdict merely because the jury could have reached a different result. As for intent, we have previously noted that it "is subjective and is almost always inferred from other facts in the case." *State v. Silva*, 2008-NMSC-051, ¶ 18, 144 N.M. 815, 192 P.3d 1192 (internal quotation marks

17

and citation omitted). The jury could reasonably have inferred that Defendant placed his clothes in the washer to prevent his apprehension, prosecution, or conviction.

**4.      Resisting, Evading, or Obstructing an Officer**

Resisting, evading, or obstructing an officer is defined, in pertinent part, as "intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act . . . has knowledge that the officer is attempting to apprehend or arrest him[.]" NMSA 1978, § 30-22-1(B) (1981). The jury was instructed that this count was based on Defendant's conduct with respect to Deputy Louick. Defendant contends there was insufficient evidence to support his conviction because there was insufficient evidence that he was the individual who drove the Bronco away from the scene, and who ran away from the Bronco after it was stopped. Again, Defendant is not challenging the admission of any particular evidence, but is challenging the weight the jury afforded the evidence. We resolve all conflicts in the evidence in favor of the jury's verdict, and thus hold the evidence was sufficient for the jury to find that Defendant drove the Bronco and fled from the scene in an effort to evade apprehension or arrest.

**5.      Ineffective Assistance of Counsel**

Defendant contends he received ineffective assistance of counsel for multiple reasons. There is a two-fold test for proving ineffective assistance of counsel. The defendant must show (1) his counsel's performance fell below that of a reasonably

18

competent attorney, and (2) the defendant was prejudiced by the deficient performance. *See State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. The burden of proof is on the defendant to prove both prongs. *See id.* "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition[.]" *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. We may, however, remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance. *See id.*

Defendant first argues his counsel was ineffective for failing to adequately investigate the origin of the scrapes on his legs. We cannot determine from the record the extent of the investigation, if any, that defense counsel conducted regarding the origin of the scrapes. Defendant claims his attorney should have hired an expert to testify regarding the scrapes, but we have no way of evaluating whether counsel considered hiring an expert or determined that an expert would not be helpful. Defendant has failed to demonstrate that his counsel's actions were not attributable to a rational trial strategy. "On appeal, we will not second guess the trial strategy and tactics of the defense counsel." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted).

Defendant next argues his counsel was ineffective for failing to properly question witnesses on cross-examination. Defendant claims his counsel did not adequately question Contreras about his bias and motive to lie, but defense counsel did question Contreras in detail about his plea agreement, and the earlier inconsistent statements he made to police. Defendant claims his counsel should have questioned Aguilera in more detail about her use of alcohol on the evening of the carjacking, which may have affected her perception and recall of the events. Again, Defendant has not shown, on this record, that his counsel's actions were not part of a reasoned, though ultimately unsuccessful, trial strategy.

Defendant argues his counsel was ineffective because he stipulated to the admission of irrelevant and prejudicial photographs showing blood-stained clothing and body parts. Defense counsel objected to the admission of certain photographs on the grounds of prejudice, but the court overruled his objection. To the extent counsel stipulated to the admission of any exhibits without objection, Defendant has failed to show he was prejudiced.

Defendant's final argument is that his counsel was ineffective for agreeing to multiple continuances without informing Defendant and for regularly failing to return Defendant's phone calls. The record does not reveal anything about the extent and nature of the communications between Defendant and his counsel.

The record before us does not support Defendant's ineffective assistance of counsel claim, and Defendant has not made a prima facie case sufficient to warrant an evidentiary hearing. Our holding does not, of course, prevent Defendant from raising this argument in a petition for habeas corpus.

**III.    CONCLUSION**

Finding no merit in Defendant's claims, we affirm his convictions.

**IT IS SO ORDERED.**


_____

**RODERICK T. KENNEDY, Judge**


**WE CONCUR:**


_____

**JAMES J. WECHSLER, Judge**


_____

**CYNTHIA A. FRY, Judge**

21